UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MITCHELL WAGNER,<br>Institutional ID No.1543049, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.<br>1:12-CV-205-BL |
| GILBERT CAMPUZANO,<br>Regional Director, TDCJ, Region VI, *et al.*, | § § § | ECF |
| Defendants. | § § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on November 26, 2012 (Doc. 1). He alleges officials at the French Robertson Unit ("Robertson Unit") and of the Texas Department of Criminal Justice - Institutional Division ("TDCJ") retaliated against him and infringed upon his religious rights under Federal and State law. The Defendants in this case include Gilbert Campuzano, Edward L. Wheeler, and Richard G. Leal.

This matter was reassigned to the United States Magistrate Judge on December 5, 2012 (Doc. 9). The court entered an Order Setting Evidentiary Hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) and 28 U.S.C. § 1915 (Doc. 7). Plaintiff refused his consent to having the United States Magistrate Judge conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c) on January 2, 2012 (Doc. 10).

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint as supplemented by his testimony at the evidentiary hearing in this case, as well as Plaintiff's

memorandum, and makes the following report and recommendation to the United States District Judge.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, as developed by his testimony, Plaintiff claims that:

1. Plaintiff has been confined to the Robertson Unit, and housed in 3 and 4 buildings, during all times relevant to the claims in his complaint.

2. Plaintiff is a Christian. He attends various worship services in the unit chapel. As part of his religious practice, Plaintiff desires to play a musical instrument and sing in a choir.

3. TDCJ Administrative Directive 07.30 requires that a volunteer chaplain be present during religious services.

4. Inmates housed in 3 and 4 building previously had the opportunity to participate in a choir. Plaintiff played the piano and sang.

5. Choir members were permitted to meet for practice under the general supervision of the guard at the desk.

6. A correctional officer noted that such inmates were not under the supervision of a chaplain or volunteer chaplain and brought this issue to the attention of Robertson Unit officials.

7. Inmates in 3 and 4 buildings were thereafter not permitted to meet for choir practice without supervision.

8. Certain inmates complained about what they perceived as disparate treatment. Defendant Wheeler held a meeting and informed inmates that continued complaints about the enforcement of A.D. 07.30 related to inmate choirs would result in the suspension of all such choirs.

9. All inmate choirs at the Robertson Unit were thereafter suspended.

10. Plaintiff was among a group of inmates who sent a fax request to TDCJ officials to have choirs reinstated.

11. Officials have not reinstated inmate choirs.

Plaintiff is seeking declaratory and injunctive relief and an award of damages.

## II. ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. These provisions thus apply to this *in forma pauperis* prisoner civil rights action. *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States,* 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault,* 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing). In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

The court has reviewed Plaintiff's arguments and claims in his complaint as supplemented by his testimony to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

A.  **Retaliation Claim**

Plaintiff alleges that the Defendants violated his right to petition for redress of his grievances insofar as after complaints were made by other inmates, all choirs and the use of musical instruments were suspended at the Robertson Unit. Plaintiff specifically alleges that he did not complain and that he did not attend the meeting with Wheeler.

In order to sustain a § 1983 retaliation claim, Plaintiff must establish: (1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). The inmate must allege more than his personal belief that he is the victim of retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). Mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.*

The plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. Plaintiff is required to "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal

courts embroil themselves in every disciplinary act that occurs in state penal institutions. *Id.* at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims.

The right to complaint about a prison official is couched in the First Amendment. *Woods*, 60 F.3d at 1164 (citing *Ruiz v. Estelle*, 679 F.2d 115 (5th Cir. 1982). "The law of this circuit is clearly established . . . that a prison official may not retaliate against or harass an inmate . . . for complaining to a supervisor about a guard's misconduct," or for utilizing his or her right of access to the courts. *Bibbs v. Early*, 541 F.3d 267, 270 n4 (5th Cir. 2008); *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). The right of access to the courts includes a "reasonably adequate opportunity to file non-frivolous legal claims." *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). In *Johnson*, the Fifth Circuit explained:

> The relevant constitutional protection in this instance accrues to the benefit of the prisoner in whose name the lawsuit is filed, not those who assist in the preparation of that lawsuit. Thus, neither any frivolous filings nor secondary litigation activity, i.e., legal research and writing that does not involve preparation of lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, may comprise the basis of a retaliation claim.

110 F.3d at 311 (footnote and citation omitted).

Consequently, the first element of a retaliation claim is not met. Plaintiff essentially argues that the constitutional rights of *other* inmates (those who complained) were violated and that as a result, choirs were suspended. Plaintiff cannot assert a valid retaliation claim based on the complaints of others. Plaintiff's allegations fail to demonstrate that but-for *his own* exercise of a constitutional right, he would not have been deprived of participation in an inmate choir. Lacking an arguable basis in law or fact, the court recommends that Plaintiff's retaliation claim be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

## B. RLUIPA and TRFRA Claims

Plaintiff further argues that his rights under RLUIPA and TRFRA were violated insofar as the Defendants failed to use the least restrictive means of limiting free exercise of religion.

Prisoners retain those First Amendment rights that are consistent with their status as prisoners or with the legitimate penological objectives of the prison. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). While imprisonment "necessarily entails a loss of manifold rights and liberties," a prisoner's right to practice his religious beliefs is protected. *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992). This right is, however, subject to reasonable restrictions and limitations necessitated by penological goals. *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). A prisoner "is not free to do that which he might wish to do, nor may he do allowable things at a time and in a manner he might prefer." *Muhammad*, 966 F.2d at 902. Several factors are relevant in determining whether a prison regulation infringes on an inmate's constitutional rights: (1) is there a valid, rational correlation between the prison regulation and the legitimate governmental interest advanced; (2) are there alternative means of exercising the rights that remain available to the inmates; and (3) what is the impact of an accommodation in favor of the inmate on prison staff, other inmates, and the allocation of prison resources generally. *Id.*

In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the Supreme Court established the applicable test for evaluating the constitutionality of regulations that infringe on a prisoner's First Amendment rights. The Court found that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349. Even if a policy or regulation impinges on an inmate's constitutional rights, it may nevertheless be valid if it is reasonably related to legitimate penological interests. *Henthorn v. Swinson*, 955 F.2d 351, 353 (5th Cir. 1992) (citing *Turner*, 482 U.S. at 89).

A prisoner's First Amendment rights may be circumscribed when legitimate penological objectives such as institutional order and security outweigh the concerns associated with preservation of the inmate's right. *See Thornburgh v. Abbott*, 490 U.S. 401, 404, 419 (1989). The court will accord "great deference to prison administrators' judgments regarding jail security." *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

> To determine whether a regulation is valid the Court considers (1) whether the regulation has a logical connection to the legitimate government interest invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional rights will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests.

*Henthorn*, 955 F.2d at 353 (citing *Kahey*, 836 F.2d at 950). A court "must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Freeman*, 369 F.3d at 860 (citing *Thornburgh*, 490 U.S. at 414-15).

Plaintiff argues that suspension of the choirs after application of AD 07.30 resulted in a multitude of prisoner complaints and impermissibly abrogates his right of free exercise of religion. The Fifth Circuit has found that TDCJ's outside volunteer policy is reasonably related to the legitimate penological interests of prison security, staff, and space limitations. *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 608 (5th Cir. 2008); *Baranowski v. Hart*, 486 F.3d 112, 121-22 (5th Cir. 2007); *Adkins v. Kaspar*, 393 F.3d. 559, 565 (5th Cir. 2004). In *Baranowski* and *Adkins*, the court also found that the requirement of an outside volunteer did not place a substantial burden on the inmate's religious exercise under RLUIPA. *Baranowski*, 486 F.3d at 124-25; *Adkins*, 393 F.3d at 571. Accepting Plaintiff's factual allegations as true, it is clear that the policy at issue (AD

07.30) and the application of the policy to include meetings of groups of inmates to practice for choir is reasonably related to the objectives of security and staff and space limitations.

Plaintiff argues that the policy was temporarily applied disparately, such that inmates housed in 18 and 19 buildings still met for choir practice. However, Plaintiff's testimony and allegations establish that inmates housed in 18 and 19 buildings were not similarly situated, with regard to custodial classification, housing, and location. Plaintiff's testimony also establishes that the ban on inmate choirs was eventually applied unit-wide. Plaintiff also testified that he continues to exercise his religious beliefs and has since the choirs were suspended by Robertson Unit officials in 2010. To the extent that Plaintiff asserts constitutional free exercise claims, such claims lack an arguable basis in law or fact; the court, therefore, recommends that any free exercise claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Plaintiff separately claims that his rights under RLUIPA and TRFRA were violated by suspension of all inmates choirs at the Robertson Unit.

The RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a) *Sossamon v. Texas*, __ U.S. __, __,131 S. Ct. 1651, 1656 ( 2011)

The threshold questions for applying RLUIPA are whether a "religious exercise" is at issue and whether the state action places a "substantial burden" on that exercise. *Mayfield*, 529 F.3d at 613. "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Under RLUIPA, the plaintiff

bears the initial burden of proving that "the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *DeMoss v. Crain*, 636 F.3d 145, 150 (5th Cir. Tex. 2011) (quoting *Mayfield*, 529 F.3d at 613). A government regulation substantially burdens a "religious exercise" for the purposes of the RLUIPA if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). "[T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Id.* A governmental action or regulation does not rise to the level of a substantial burden on religious freedom if it "merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id.*

The Fifth Circuit has found that the RLUIPA does not permit suits against Defendants in their individual capacities. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 329 (5th Cir. 2009)(RLUIPA creates a private right of action for injunctive and declaratory relief but does not permit individual capacity damage suits). The Supreme Court has concluded that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver. *Sossamon v. Texas*, 131 S. Ct. at 1663. As such, the only relief remaining under RLUIPA are declaratory and injunctive relief.

The court accepts Plaintiff's allegations that using his musical skills are very important to his religious exercise and that this is a sincerely held belief. However, Plaintiff's allegations fail to demonstrate that he has been prevented from exercising his religious beliefs or that he has been

substantially burdened in exercising his religion. Plaintiff testified that he is able to pray, attend service, clap, and even sing during services. He testified that inmates are not permitted use of musical instruments. The appropriate inquiry is whether suspension of the choirs has truly pressured Plaintiff to significantly modify his religious behavior and significantly violates his beliefs.

Plaintiff's testimony demonstrates that the suspension of the choir did not cause him to significantly violate his religious beliefs. His testimony, accepted as true, demonstrates the availability of opportunities for him engage in religious exercise. His testimony, accepted as true, demonstrates that the suspension of the choirs did not place a substantial burden on his religious belief. Plaintiff's RLUIPA claim lacks an arguable basis in law or fact; the court recommends that such claim be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Plaintiff has asserted claims under the TRFRA. The exercise of pendent jurisdiction is discretionary with the district court. *Wong v. Stripling*, 881 F.2d 200, 203-04 (5th Cir. 1989). The court has found that all of Plaintiff's constitutional and RLUIPA claims lack an arguable basis in law or fact and recommends that they be dismissed. The court further recommends that the United States District Judge **DECLINE** to exercise pendent jurisdiction over Plaintiff's state law claims under TRFRA.

C.  **Official Capacity Claims**

Plaintiff has not indicated whether suing each of the Defendants in their individual and official capacities with regard to both his constitutional and RLUIPA claims.

The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991)). A state's sovereign immunity is not waived for claims pursuant to 1983.

*Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)). Moreover, the State of Texas has not consented to this suit. *Id.* (citing *Emory v. Tex. State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984)). As an instrumentality of the state, TDCJ is immune from a suit for money damages under the Eleventh Amendment. *Talib*, 138 F.3d at 213. Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996). The Eleventh Amendment immunity thus extends to TDCJ-ID officers acting in their official capacity. *Aguilar*, 160 F.3d at 1054.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity noting that a state cannot confer authority on its officers to violate the Constitution or federal law. *See Aguilar*, 160 F.3d at 1054. However, under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)). Plaintiff's allegations fail to demonstrate any such policy.

Moreover, as States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA, Plaintiff's claims for money damages against the Defendants in their official capacities, lack an arguable basis in law or fact. *See Sossamon*, 131 S. Ct. at 1663.

Plaintiff's constitutional and RLUIPA claims against the Defendants and against TDCJ in their official capacities lack an arguable basis in law or fact and the court **RECOMMENDS** that such claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

B.   **Pending Motions**

Plaintiff filed a motion to enjoin and restrain Defendants from violating RLUIPA/TRFRA, supported by a memorandum, as well as a letter motion for a hearing on his request for preliminary injunctive relief (Docs. 11, 12, 13).

In order to secure a temporary restraining order or preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that movant will suffer irreparable injury if the restraining order is not issued; (3) that the threatened injury to the movant outweighs any damage the restraining order might cause to the opponent; and (4) that the restraining order will not be adverse to the public interest. *See Southerland v. Thigpen,* 784 F.2d 713, 715 (5th Cir. 1986). The party seeking a restraining order or injunction must prove all four elements and failure to prove any one of them will result in denial of the motion. *See Enterprise Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472 (5th Cir. 1985). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune,* 534 F.2d 1115, 1121 (5th Cir. 1976).

Plaintiff's allegations fail to demonstrate a likelihood of success on the merits, that the threatened injury outweighs any damage that might be caused to the Defendants, or that the requested relief is not adverse to the public interest. The court recommends that Plaintiff's motions be **DENIED**.

### III.   CONCLUSION, RECOMMENDATION, AND TRANSFER

Having carefully considered Plaintiff's factual allegations, his testimony, his claims, and the applicable law, the court finds that Plaintiff has failed to state cognizable constitutional claims for violation of his right to free exercise of religion, or for retaliation. The court further finds that Plaintiff's claims based on RLUIPA lack an arguable basis in law or fact.

The court, therefore **RECOMMENDS** that:

1. Plaintiff's constitutional claim and claims under RLUIPA be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**, as to all Defendants, as asserted against them in their individual and official capacities; and

2. the United States District Judge **DECLINE** to exercise pendent jurisdiction over Plaintiff's state law claims; **AND**

3. Plaintiff's motion to enjoin and restrain Defendants filed January 2, 2013 (Doc. 11) and letter motion for hearing filed January 15, 2013 (Doc. 13) be **DENIED**.

Any pending non-dispositive motions not otherwise addressed above are **DENIED**.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and to any attorney of record by first class mail or electronic notification.

Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

**IT IS ORDERED** that the transfer of this case to the United States magistrate judge is terminated, and the case is hereby transferred to the docket of United States District Judge Sam R. Cummings.

**SO ORDERED.**

DATED this 1st day of March, 2013.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**